## ROBERT SMART *versus* AARON THOMAS, Jr.

April 4 or 24, 1825

William Woodbridge, solicitor for complainant.

### [OPINION]

Robert Smart petitions the Sup. Court for an injunction on a Jug$^t$ recovered against him by the said Thomas in the Sup. Court at the Term of 1822—and a Supersedeas to an Ex$^n$ issued on said Jud$^t$—and that the premises may be fully examined into & determined by said Sup. Court Sitting as a Court of Equity at the Term of said Court of Sep$^r$ 1825

In tracing the historical inducements to the petition, it appears pretty evident from the date of the transactions out of which the litigation sprang, that they originated in *treasonable practices* of one or both the parties in the time of the late war—which circumstance gives the case no extraordinary claim to a favourable consideration.

In order to arrive at a just conclusion on the merits of the petition, it is necessary to notice antecedent proceedings in the case—It appears that Aaron Thomas Jun<sup>r</sup> instituted a suit against Robert Smart in a Justices Court where he recovered a Judg<sup>t</sup> against Smart—that Smart by appeal removed the case into Wayne County Court—where Thomas again recovered a jud<sup>t</sup> against said Smart— when the said Smart by *some process* removed said case into the Sup. Court—where it was pending in the Term of 1822— That said Thomas & Smart then mutually agreed to submit the case to Referees—viz Jonas W Colborn & Calvin Baker who on the 10th day of October in the same Term returned into Court their report in the premises,—finding a certain sum due from said Smart to said Thomas, which report was accepted by the Court, there being no opposition made to it, & Jud<sup>t</sup> entered thereon   That at the succeeding Term of said Court Smart caused a motion to be placed on the Record of said Court to set aside said Report.

The Petitioner complains of the manner of making up the Report from which he infers that it ought not to have been accepted by the Court—and states that one of the Referees Calvin Baker was too unwell to bestow that attention to the subject which its importance required—and submitted the examination of documentary evidence to Colborn the other Referee—notwithstanding which the said Baker improperly signed the Report, & further States that he suspects that Colborn was partial towards the plaintiff, Thomas.— He further states as a grievance that the Report was returned into Court on the 10th day of October & Judg<sup>t</sup> entered on it on the same day in the absence of the Petitioner and that on the succeeding day the Term of the Court expired— He complains also that the motion on the Record of the Court as aforesaid has not been decided.

I will now apply the reasons to ascertain whether they contain merit sufficient to sustain the petition.

It must be recollected that this cause being already in Court came strictly within the provisions of the 35 section of An Act concerning the Supreme & County Courts (Page 320 and the 3d section of an act for regulating references and detirmining controversies by arbitration Page 390. There does not appear any complaint that time was not allowed to the parties to be fully heard before the Referees—nor is there any complaint of admission, or exclusion of testimony before the Referees—Altho' the modes of proceeding in cases of arbitration are different from those on References of cases already in Court by suit I can not perceive why the same reasons required by the 2nd Sect. of the statute last cited for setting aside an award of Arbitrators should not equally apply to the Report of Referees— There are none of those reasons alleged in the petition—neither corruption nor undue means, nor even gross misbehaviour—no man in his senses will be led to construe the bodily indisposition of Baker as partaking of either. The suggestion of the petitioner that he suspects that one of the Referees (Colborn) was partial to Thomas is unsupported by any fact and resting on surmise only, is intitled to no weight— In relation to the recantation of Baker one of the Referees, after signing & agreeing to the Report—it stands on no better footing than that of a Juror after delivering into Court a virdict to which he had voluntarily assented; which could never be received in Court to arrest a Judg<sup>t</sup> and must therefore be totally disregarded in the present case

And as the petition no where charges the plff. Thomas or the Referees with corrupt or fraudulent practices in procuring or making up the Report it must be considered as having been honestly and fairly made.

In relation to the time of returning the report in cases of References, the Statute

makes no stipulations on the subject—it is therefore a fair presumption that it may & ought to be done as soon as completed if the Court be then in session— unless the parties under a Rule of Court for that purpose agree otherwise.

The petitioner complains that he was not served with a copy of the Report— the statute does not require it   It is also complained of that the Report was accepted on the same day it was brought into Court and in his absence— This comes with a bad grace from a suitor who himself lives within the verge of the Court and who ·has generally had two & never less than one attorney of Record   Such negligence in one Suitor must not be made to operate to the injury of the other—provided it be the· result of negligence only— In relation to the motion on the Record for setting aside the Jug$^t$, if the view I have taken on the other parts of the petition be correct nothing need be said: for supposing that all the reasons urged in the petition for opening the judgment would, had they been seasonably offered, have been insufficient to have arrested it, which I am clearly of opinion would have been the case, what possible good would arise from enjoining it till the next Term of the Court unless it should be purely to accommodate the Petitioner with one year from that time to pay the plaintiff a sum of money for which he has already recovered three successive Judgments in three Distinct Courts of law— As Justice & Equity are the great ends of the law—When those objects are well accomplished farther litigation ought not to be encouraged.

I am therefore of opinion that the injunction ought not to be granted

J. Witherell